## PARDON OLNEY v. NATHAN & ABEL FENNER.

Of the rights of riparian proprietors to the use of water flowing by their land.

The owner of a lower privilege has no right of action against the owner above for a diversion of the water, where, by reason of the rights of an intervening proprietor, he is not entitled to the use of the water so diverted.

Twenty years enjoyment of the use of the water of a stream in a particular mode, entitles the person so enjoying it to its continued use in the same mode.

Where one tenant in common conveyed to another his undivided moiety in a certain mill estate, "together with all the privileges and appurtenances thereto belonging and in anywise appertaining to the same," and afterwards purchased a lot of land on the same stream below, it was held that he was estopped from making any claim for diversion, so long as the water was used at the mill in the same manner as when the mill was sold.

THIS was an action on the case for the diversion of the water of Wood river from the plaintiff's mill.

The declaration charged that on the 1st of January, 1849, by means of a certain flume of the width of ten feet, and the depth of five feet, placed into and through the south east end of a certain dam, extending across said water course at a place a little above the land and mill of the plaintiff, the defendants did and ever since have and still do draw off and divert from the plaintiff's said land and mill, all the water of said water course, which naturally flowed and still of right ought to flow over the plaintiff's said land and to and by his said mill or factory, whereby the plaintiff hath been, during all the

29

time aforesaid and still is, deprived of the use and benefit of said water and his said land and mill hath been and is greatly impaired in value, &c.

The plaintiff put in proof of his title to a lot of land with a mill thereon, situated on the west or Hopkinton side of said Wood river ; and to show that the natural course of said river, after passing the defendant's dam, was on the west side, between a little island in the river and the Hopkinton shore, and that the defendant after taking the water through the flume for his factory, returned it into the river on the east side of said island, between said island and the east or Richmond shore, and that in consequence of this diversion it did not return into its natural channel so as to supply the plaintiff's mill, although his mill was situated below the island.

The defendant put in evidence to show that the natural current of the stream was on the east side, and that it had never flowed on the west side in any considerable quantity since the building of the dam, except for a short space a few years before the bringing of this action, when the course of the stream was changed by a freshet which carried away a part of his dam ; and he also put in evidence to show that, even if the course of the river was on the west side, it would return into its channel before reaching the plaintiff's mill but for certain stones which had been filled into the river by the plaintiff, at the southern termination of said island, and a certain dam built to conduct the water to a certain mill called the Teft mill ; and he put in evidence to show, that the said Teft mill, which was above the plaintiff's, on the Richmond side, had a right by twenty years user to the use of the whole of the water of the stream, and that the plaintiff's right was merely a waste water privilege ; and to show this he

proved that in 1812, the owners of the Teft mill had a dam extending from the Richmond side to the centre of the river, which dam continued until 1822, when the owners of the Teft mill purchased the right to extend said dam to the opposite side of the river, and did so extend and have ever since continued to occupy it so as to use the whole of the water.

The plaintiffs contended that this use by the Teft mill was no defence for the diversion by the defendants, even if it were proved ; and put in proof to show, that so late as 1834 the water of Wood river was used by a forge situated on the Hopkinton side, which, after its use, discharged it below the Teft dam so as to flow past the plaintiff's mill.

The defendants also put in a warrantee deed from Pardon Olney to John Olney, dated in 1844, said Pardon and John being then tenants in common of the defendants' mill and dam, by which he conveyed to the said John his undivided half thereof, "with all the privileges and appurtenances thereto belonging or anywise appertaining to the same," and claimed that the said deed was an estoppel upon the plaintiff's claim for diversion, the water having been used ever since the execution of the deed as it was used at that time.

*Blake* and *Shearman* for the plaintiff.

*Dixon* and *Updike* for the defendants.


Greene, C. J. charged the Jury.

Water is a subtle element, and this case is but one instance of the many difficult and complex questions which grow out of the conflicting claims of its owners. The plaintiff claims by several counts, as the owner of land on

Wood river, running by deed to the centre thereof, dam-
ages for the diversion of the water.   Ordinarily the owner
of land, bounding on the banks of a river, owns to the
centre of the channel, and may claim as riparian proprie-
tor to have the river flow by his land unobstructed and
undiverted in its natural course, and without any mate-
rial diminution.   And even though he makes no use of
the water, no one has a right to disturb its natural flow.
He has the right to build a dam to the centre of the river
and to use his proportion of the water for mill or other pur-
poses, and the opposite owner has the same right on his
side.   If the same proprietor owns both banks, he has a
right to the use of the whole of the water.   These are
common law rights, and if in this case there has been a
wrongful diversion, the plaintiff as owner of one bank of
the river, is entitled to damages.

The defendants contend that there has been no diver-
sion since the building of the ancient dam.   This is a
question for you to determine.   If there is as much water
on the Hopkinton side and on the Richmond side as used
to run there, the plaintiff has no ground for complaint, but
if more water is drawn through the flume than used to
run over the rolling way, so as to make an increased di-
version, then arises the question whether the water so
diverted is returned in such a way that it would run past
the plaintiff's land and give him the benefit of it.   And
this also is a question for you to decide.

The defendants are responsible for their own acts but
not for those of others, neither for the erection of the dam
nor the filling in of the river.   If you think the water
was diverted in consequence of the erection of the dam
and the filling in with stones, the defendant is not an-
swerable ; but if, notwithstanding the removal of the

dam and the stones, the river would not return to its natural course, then the plaintiff has been injured. If the whole river were previously discharged on the Hopkinton side, still the plaintiff could have a right to the use of no more than one half, and if it would now run by his land but for these obstructions he has no ground for complaint, unless its natural impetus has been impaired by the diversion.

But the defendants likewise contend that the Teft mill is entitled to a prior use of the water, and that the plaintiff is not entitled to one half of the water, but only to a waste water privilege after its use by the Teft mill. The plaintiff stands on his own title and must prove it. If it be true that he is entitled to only the waste water of the Teft mill and he gets that now, this is a valid defence. The plaintiff says, indeed, that the right of the Teft mill is no defence for the defendants' act. But this is a mistake. The plaintiff must show a right to the use of the water before he can complain of its diversion. Otherwise, if the plaintiff should recover for the diversion and the defendant should return the water into its original channel, this would be no bar to a suit by the proprietors of the Teft mill for changing the course of the water, and so the defendant might be mulcted in damages both ways. The plaintiff must show a title in himself, but the defendants may show a title in a third party.

The title set up for the Teft mill, is a title by twenty years user. To give this right, the use must be open, continuous and uninterrupted. It is immaterial whether the owner below has any need of the water or not. The lower owner has a right to the flow of the whole stream, whether he needs it or not, and a diversion for twenty years confers just as much right against the lower owner,

who has no use for it, as against one who needs it all the time for mill purposes. The Teft dam was built in 1812, and in 1822 the right was purchased to continue it to the opposite bank of the stream. This purchase conferred no right to divert the water, and the claim is not of a right by purchase, but an enjoyment of the use of the water by this dam in its present condition for twenty years. On the other side, it is said that the water used by the forge was, until 1834, discharged below the dam. That is for you to determine, and also how much if any deduction is to be made from the present use of the water by the Teft dam, or the defendants, on that account. If the possessory right of the Teft dam is proved, and the plaintiff is only entitled to the waste water, he has no claim for damages ; if it is not proved, or if he receives less now than for the twenty years during which this right was acquired, he has a right to damages for the diversion.

But there is still another defence. In 1844, Pardon Olney, the plaintiff, and John Olney were tenants in common of the mill owned by the defendants. In this year the plaintiff conveyed to John Olney his undivided moiety in said mill estate, together with "all the privileges and appurtenances thereto belonging or in anywise appertaining to the same." Now we think, the plaintiff having sold the property as it was in 1844, and received the purchase money, that it is not competent for him, upon purchasing land below, to claim damages for diversion, however proper such a claim might have been in his vendor, so long as the water remained as it was at the time he sold the mill. If he had owned the land below at the time of the sale, he could not claim the natural flow of the water, because the right to use it in the mode in which it was then used would have passed by the sale, and the

Olney *v*. Fenner.

land coming to his possession subsequently gives him no right which he would not then have had. This is an estoppel in pais, that is, the plaintiff is estopped by his representations from making any claim which shall be inconsistent with them against the person who has expended labor or money upon the faith of such representations. If, therefore, the water is used now as it was in 1844, the estoppel is a bar to the plaintiff's suit, but it will not cover any change which has been made subsequent to that time.

*Verdict for the defendants.*